Council will come forward and allow the students that need to leave to leave. Counsel? Good morning, Your Honors. May it please the Court, my name is Jane McClellan, I'm an attorney from the Federal Public Defender's Office here in Phoenix, and I'm here on behalf of the appellant, Antonio Gonzalez. If the Court would like, I can briefly summarize the case for the students. Mr. Gonzalez was charged with four counts of making a false statement in the acquisition of firearms. When he purchased firearms, he had to fill out a form, and on that form, it stated he had to state his residence. The government contends, and the jury found in this case, that the residence he gave was not his true address, and thus it was a false statement. Your Honors, I would like to focus on two of the issues in this case, which both revolve around the evidence that was or was not admitted in this case. The defendant did not receive a fair trial, we believe here, because substantial evidence was submitted that tended to show that he was engaged in some other wrongful conduct, which appeared to be selling guns or distributing firearms to other people. Mr. Gonzalez was not charged with this crime. He was not charged with making a false statement on the form that he was not buying these for his own use. And yet, the government's evidence revolved around this other conduct. Now, the government had to show that this evidence was admissible under Rule 404b, and it had to give a rational chain of inferences. It had to give a valid reason for the introduction of this evidence. And yet, it has never – it has failed to ever really give a valid reason for why this evidence was admitted. Well, I think they've offered at least one. Let me try that and ask you to respond to it. The evidence with regard to the guns and what you say suggests another kind of illegal activity actually may be used to explain why it is it made a difference as to what address the defendant offered up and why it wasn't simply an accident or happenstance that he used an Arizona address because of the difference in his ability to purchase firearms in Arizona with an Arizona address as opposed to his ability to purchase firearms either in Arizona or in California with the California address that appeared to more accurately reflect his current residence, that is, his motivation for doing what he did can be explained by the firearms and his ability to do something else with the firearms. Your Honor, I believe that that goes to his motive for buying the firearms, but not to his motive for writing the address down. Well, if he could only buy one firearm a month with a California address and doesn't have that limitation with an Arizona address, and he sure bought more than one firearm, why doesn't it go to the use of the address? Your Honor, he could have been buying these guns for a collection, as was the statement that he gave. He could have been buying the firearms for whatever reason. But he couldn't have done any of those things if he used a California address, could he? No. He would not have been able to buy firearms in Arizona. Isn't that the point? It goes to the fact that he used an Arizona address for a reason. But it doesn't show why he was buying the firearms. It only shows what address he put down. It doesn't show his intent as to why he put that address. Well, I'm saying I think it does. He uses an – the argument offered by the government is he uses an Arizona address because with an Arizona address, he can buy a whole lot more firearms. Well, Your Honor, he could have been an Arizona resident and bought all of those firearms, though. He could have been engaging in straw purchases and still been an Arizona resident. So it doesn't prove that the evidence itself is wrong. No, but it explains why he would use an Arizona address even if he's not an Arizona resident in reality, which is the point of the government's case. Well, Your Honor, the amount of evidence that it put on on that issue I think was far more than what was necessary, and I don't believe that. I still believe that the address that he gives does not prove his motive for why he bought the firearms. There was a traffic stop, wasn't there, after one or more of these purchases? Your Honor, they were – there was surveillance of the gun shop, and it was basically set up that he would be pulled over. Well, there was a traffic stop. Yes. He was asked for a driver's license, right? He was, Your Honor. He gave them an expired Arizona license. That's correct. They asked him if he had a valid one. He produced a valid California driver's license, and he was asked, where do you live? And he gave a California address, right? He initially gave his parents' address on Bernard, the address that was on the Arizona driver's license. Now, he was asked by these officers that stopped him, and as far as he knew, it was a valid, completely valid, unconnected-to-the-firearms-purchase traffic stop. He has an expired Arizona license, but a perfectly valid California license with a California address, and they ask him during that stop, where do you live? And he tells them California, right? Well, Your Honor, he initially gave them the Arizona driver's license, and I think he also initially said that he lived in Arizona at his parents' address. And then he -- From the results of the traffic stop, couldn't a jury properly conclude that, in fact, he was a California resident? They may have concluded that, and we don't object to the evidence that was taken from that traffic stop. But isn't that tied to what Judge Clifton asked about, and that is his motivation for saying on the form, I'm an Arizona resident, when, in fact, he was not? Well, Your Honor, in fact, if he gave his Arizona driver's license after the traffic stop, and at that moment he has no idea that this is in connection with the firearms, then the fact that he gave an Arizona driver's license could also be a fact that tends to show that he thought in Arizona he should use an Arizona driver's license. I just don't believe that there's a connection between the ---- Well, you've told us that the jury could have validly concluded, based on the information before it, that he was, in fact, a California resident. Well, I believe ---- Correct? Yes, I believe they did. You concede that? Well, Your Honor, I ---- that there was evidence at that time that he gave a statement that he lived in California, I believe at some point. Our standard of review in a case like this is we look at the facts most favorable to the prosecution. If there's any dispute or ambiguity in the evidence, most favorable to the prosecution in terms of looking to whether to sustain the verdict. That's correct, isn't it? Yes, Your Honor. But on the other hand ---- I'm waiting for you to explain, apparently to both Judge Clifton and I, and perhaps Judge Thomas, why there wasn't a rational connection between the statement he made that the jury concluded to be false about his residency and the amount and nature of weapons he was buying. Because, Your Honor, he ---- there's no ---- he could have been an Arizona resident and still have purchased those firearms. Sure. But isn't that a jury question, a jury argument? I mean, the question is whether they're entitled to put on this evidence at all. I mean, certainly it's prejudicial. There's no doubt about that. But is it relevant and probative? And there's an argument that the government, the jury could well say, look, we don't understand. This looks like a big mix-up to us. And we're not going to convict anybody on a mix-up. And so the government fills in the gaps, say this is why he was doing it, and that's what he's charged with. And why isn't that a plausible reason to admit the evidence? Because what the government had to prove was that he knew he put the wrong address down on the form. They had to prove that this was not his residence. And, in fact, under the definition of residence here, he could even have two residences, both in Arizona and California, if he lived at some times at one place and at other times at another. What they had to prove that was that he was not living part-time, at the minimum, at Arizona. Because if he was living part-time in Arizona, he could buy guns legally in Arizona and use his Arizona address. So the – but the government did not emphasize those facts. The government emphasized the facts regarding the amount of guns that were purchased, the amount of money spent on the purchase, the fact that they were not collectible guns. There was substantial evidence on all of these issues, which did not have anything to do with what, in fact, his residence was. I'd also like to – Well, the guns did speak to the residence, too. There was the question of the guns that – okay, we bought a lot of guns. Where are they? Takes them back to the house. They're not there. He – well, my mother doesn't like them in the house. They're in the truck. But they're not in the truck. Ever report them stolen? No. Well, doesn't that suggest that maybe they actually weren't stored in the truck because he didn't actually live there? Doesn't that speak to the residence issue directly? Well, Your Honor, his explanation was that they had been stolen, and that – the government's allowed to offer its explanation and its evidence, too. And doesn't that speak directly to the question of whether he lived there? He says he stored them in the truck outside the house. They're not there. And his explanation is they were stolen, but he doesn't report that they're stolen. Doesn't that speak to the residence? Your Honor, the fact that they weren't there I don't think proves that he wasn't living at the residence. Well, if he bought a whole lot of guns and you're going to put them someplace and he says they're at home but they're not home, doesn't that suggest maybe that's not his home? It could, Your Honor, but I don't think it did in this case. He said he kept them in the truck in the garage and that he didn't want his mother to know that they were in the home because she was opposed to firearms. And that was the reason they were in the garage. He offers an explanation, but why isn't it relevant to the question of whether that's his home? He says he's got them at home, but they're not there. He offers an explanation. Isn't all of that on the subject of whether the place he said that they'd be located wasn't actually his home? Well, it may be relevant, Your Honor, but you still have to do a balancing test under Rule 403. And I think that the amount of evidence on all of those issues was so prejudicial that the jury, that the trial was revolved around whether he was involved in this criminal conduct of distributing firearms and not regarding the residence issue. And there was substantial evidence supporting the defense argument that he did reside there. And so there was not a strong case for the government on the residence issue. I'd also like to address the issue of the photographs. The defense proffered photographs that were taken of the residents. It's true that they were taken several months after the search of the home.  That's right. Ten months, yeah. So we proffered that these photographs did depict the scene substantially as it was at the time. And the mother testified that there were three beds in this room at the time that he lived there, that there were clothes of his in the closet at that time. And we had pictures that depicted those things. The judge did not allow their admission because it stated they were not relevant. But clearly, these were relevant, and they would have supported the defense case, and they should have been admitted. I would like to reserve the remainder of my time for rebuttal. Thank you. Thank you. We'll hear from the government at this time. Counsel. May it please the Court. My name is Fred Batiste. I'm an assistant United States attorney with the U.S. Attorney's Office here in Phoenix. I tried this case along with Ms. McClellan. With respect to the issue of the evidence that the government offered with respect to the defendant's conduct during the course of the purchases, I'd just like to clear up a couple of things on the record. First, the defendant's license had not expired. It had been suspended by the State of Arizona. When the defendant was pulled over during the traffic stop, he handed the driver's license, the initially he handled the Arizona driver's license to the police officer. The police officer then asked him what the address was, and he could not tell the police officer what the address was on the residence that he said he lived at in Arizona. At that point, he was then confronted by the fact that his driver's license was his Arizona driver's license was suspended. So then he immediately shifted gears, pulled out the second driver's license, which was a valid Arizona driver's license, and then immediately changed his story and said, oh, I'm a resident of California. The second license was a valid California license. So was there ever any dispute that when he was in Arizona, he stayed with his parents? There was no evidence to the contrary, was there, in my mind? There was no evidence to the contrary. But what happened was when the --when after the car was searched and they said, where are the guns? Well, the gun --the rest of the guns are back at his mother's house. And it was interesting, the evidence had shown that he had previously purchased a total of 16 guns. He had purchased six that day and ten on three prior occasions. He never admitted to the officers that he had purchased a total of ten guns on prior occasions. He said that he had purchased approximately five guns on one prior occasion. When we went to the house, the officers, when they conducted the search, they wanted to --it was a consent search. They only wanted to search his belongings. They knew that they were going to his parents' house, so they wanted to be very cautious. So before they conducted the search, they said, what in this house is yours? And the only thing he identified was one duffel bag containing clothes and toiletries. He did not identify any other location in the house outside of the truck that possibly where the guns were. There was nothing in the house, not a toothbrush, nothing in any drawers, nothing in the closet, nothing anywhere that he could say, I have a possession in this house. All he had was one simple travel bag. So -- There was testimony from his mother that he had more. Well, there was testimony from his mother that he was living at the residence at the time of the house, but there was no testimony about that he had anything specifically at the house. And when – now, let's jump very briefly to the photographs. My recollection of the record in this case, Your Honors, is that when we were going through the photographs with the defense counsel and Judge Carroll, we said – the defense counsel was asked, what in these photographs can you proffer to the Court, the defendant owned and was present at the time of the search? And the defendant could not identify one item in any of the photographs that belonged to the defendant and was present at the time of the search. So it was the government's position that these photographs were irrelevant. We didn't deny that there was a bedroom. We didn't deny that there was a garage. We didn't deny it was a three-bedroom house. We didn't deny that the family lived there. Our position was, is that the defendant was not living there for purposes – legally living there for purposes of buying firearms. He was, you know, he came to Arizona to buy guns, so, okay, he's staying in his mother's house overnight. But he's not living there. It's not a legal residence for purchasing – purchasing firearms. The photograph of the closet, it's filled with men and women's clothing. We're going through the proper. Defense counsel, can you identify one item in this closet that – that was the defendant's owned by the defendants and was in this closet at the time of the original search? No. And then when you look at the photograph in the bedroom, when the – when the officers searched the room, they recalled only one bed. The defendant's mother said there was three. But it was – it wasn't disputed that at the time of the search, there was only one duffel bag with the defendant's clothing and toiletries in it. But the defendant proffers a photograph with numerous cute little stuffed animals in the same photograph. It was the government's position. These are – these are things that are completely irrelevant, things that could draw sympathy from the jury on behalf of the defendant. Same thing in the photograph. Stuffed animals? Yes, Your Honor. Eichlecht's guns and stuffed animals. No, he's – no, he doesn't like guns, but he's got two wonderful little sisters that have stuffed animals. And wouldn't it be terrible if this nice guy who has two little sisters that have cute stuffed animals might get in trouble because of this? That's the information. That's why you put in – that's why you try to put in his criminal history? Well, Your Honor, I never – we didn't put in his criminal history. He got a fantastic stipulation from the government, what I call the criminal history clean bill of health. I mean, I – Well, wouldn't you allow him the stuffed animals if you're going to put in his criminal history? Well, you know, the criminal – his criminal history, the stipulation was that he – He had none. He had no felony convictions. He had no misdemeanor convictions. And he had no criminal history that would prevent him from either possessing firearms or purchasing firearms. And there was testimony that not once, not twice, not three, not four – not three, but four times there was a criminal history background check before he purchased the guns, and every single time he purchased the guns, he passed the background check. So with respect to the – the argument that the Defendant raised in his brief about the fact that there was some very brief and confusing testimony about the possibility of criminal history in the case, I think the government bent over backwards to try to clear that up. I don't understand the relevance of putting in the failure to report the theft. Well, I believe it's relevant. I believe it was relevant, Your Honor, because for – for a number of reasons. One, to address the credibility of the Defendant. In other words, the Defendant was saying that he lived in Arizona. Well, he also said that he – He didn't testify at trial, did he? No. But initially, when he was pulled over and that testimony was offered, he – he – when he was pulled over, he initially said he lived in Arizona. He lived at his mother's house. And then, obviously, every time he filled out the forms, the four times he filled out the forms, he made a representation on those forms, I'm a resident of Arizona. I live at this address. So what does that have to do with the theft? It has to do with the theft, Your Honor, is that he's a person – what is the – what is the natural course of conduct of someone who spends a lot of money for guns, in this case, 10 guns, says – you know, he said, well, there were only about five, but we knew that there were 10 because we had the records that he previously purchased 10 guns – spends a lot of money on guns, says, oh, they're stored at my mother's house. Well, show them to us. Let's go check this out. You say you're a collector. Let's show – let's see your collection. You go there. Oh, they're not there. Okay. Officer says, well, you know, you should report – you should report these as stolen. Now, it's important that they're reported stolen because that – that can impact how the guns are traced later on. But beside that, so he never reports them stolen. So what's the inference from that? One, the defendant's not credible. And two, the defendant never bought these guns to keep – Let me stop you on one first. How is the fact that he's not credible admissible evidence if he doesn't testify? I mean, you're not allowed to prove generally a lack of credibility. Well, in a sense – in a sense, Your Honor, he is – he is making a – what we are doing is he's being prosecuted for a representation that he made on those forms. He goes in. He says, I am a resident of Arizona. This is my address. So in a sense, his credibility – Well, let's say that he lied about his age in an application some years back. You couldn't get that in unless he testifies or unless somebody puts a credit on age. That's correct, Your Honor. So what's the difference between that and failure to report a theft under your theory? I think because this conduct was contemporaneous with the actual purchase. In other words, this was a statement that he made on the date of the fourth purchase. And it was clearly related to his conduct in relation to these guns. In other words, it wasn't a statement related – it wasn't a false statement that he'd made in relation to anything else. It's the government's position is that this is a statement that was made directly in relation to this particular course of events. You know, when you read through this, it does appear that you were trying him for a different crime, a straw man purchase. I mean, all of the evidence, the bulk of the evidence goes to that inference, including the fact that he didn't report it for a theft. And there's – at a certain point, it gets to be a bit too much. I mean, you can get in motive, but it's – then it's off the closeness of the case to be deemed unduly prejudicial when compared with its probative value, it seems to me. All of them, the theft, the straw man purchases, all of that. Well, Your Honor, but then we look at – we look at what is – what is this conduct? This conduct is all contemporaneous. It's intertwined, and it directly relates to the guns. Whereas, when we look at the – one of the cases cited by the government in its brief, I believe it's the – if I have one moment – the butcher case, where we have a situation where an individual is seen carrying a briefcase out to a pickup truck. And then the pickup truck – and then when he's brought out of the pickup truck after a stop, a gun that was supposedly between his legs falls down on the ground. He's charged with felon in possession of a firearm. In that case, the Ninth Circuit allowed the government to get into the contents of the briefcase. And what were the contents of the briefcase? A drug ledger, methamphetamine, a scale, and a significant amount of cash. Now, the inference there was obviously people who are drug traffickers possess firearms in order to protect their drugs. And that is obviously an extremely prejudicial testimony. The defendant was charged in that case with simply felon in possession of a firearm. The government was allowed to bring in very significant and prejudicial information regarding him being a pretty active methamphetamine trafficker. Whereas in this case, what is the government trying to show here? The government is trying to show that people in California can only buy one gun, one handgun a month. And if they buy that handgun, it's got to be registered with the state. In Arizona, those two state laws, there is no comparable state law. So there is a motive for a California resident to drive the three or four hours to a border community in Arizona, buy a bunch of guns, and take them back and sell them. And in the government's way of thinking, that's the same type of rationale. If it's reasonable for a jury to infer that people who are involved in drug trafficking possess firearms, it's reasonable for the government to argue that people who live in California and have an economic incentive to buy guns in Arizona and then come back and sell them in Arizona, it's the same type of conduct. And I would posit on one level, depending upon what the guns are being used for, it's more prejudicial to be selling methamphetamine than it is to be selling firearms. But obviously, depending upon where the firearms go, that could be equally as egregious. Anything further? Nothing further, Your Honor. Okay. Rebuttal. Your Honor, just first to just clarify the issue on the photographs, there was some discussion in regard to the closet, whether there were any clothes in there that we could identify as his. But in regard to the photo of the bedroom, there was, I don't believe, any discussion regarding whether any of those items were his. The proffer was that there were three beds in that room at the time of the surge. And at the time Mr. Gonzalez lived there, the photograph showed three beds. The reason it was so important for us to put that evidence in was that the government agents had all testified before that that there was only one bed in that room and that no one appeared to occupy that room. The reason the stuffed animals were relevant was because it was our position that the defendant and his two little sisters were in that room. And, in fact, still the sisters still resided in that room at the time the pictures were taken, which was why there were stuffed animals and bikes and that sort of thing. Now, in regard to the failure to report the theft, the Mr. Gonzalez told the officers at the time that the guns were stolen. They had all of the serial numbers of the firearms. The fact that he did not then call and make a report after he'd been questioned and accused of things by officers is not probative of anything. And, in fact, Judge Carroll commented on that, even though he ruled against us in this case on that issue. And there's no evidence that defendant knew of this law that said that you – that a California resident could not purchase firearms. There's no evidence there. None of the questioning was in regard to that. And I think it's very important in regard to all of this to note that there was substantial evidence showing his ties to Arizona. True, he got a traffic ticket during this time period in California, but there was also evidence presented to the jury that he got a traffic ticket in Lake Havasu area or Bullhead City just a couple months before – in September of 2004, and this first occurred in January of 2005. There was evidence that he'd had a child with a woman that lived in Bullhead City in Arizona. He had substantial ties to Arizona. There was no doubt of that. And all of the witnesses presented by the defense clearly testified that he moved out in May of 2005. Also, it's not as if he ever even had his own place. He was living first in California with his aunt, and then he moved out to Arizona and lived with his parents, and then he moved back and was living with his aunt. So this was someone that went between two States. So all of the evidence needs to be viewed in light of the fact that this was not a strong case for the government on the issue of residence. They appeared to have more evidence regarding the straw purchase than regarding the residence. And I would point the – your Honors to the Ellis case, which notes that there's a grave – when there's a grave danger that the defendant's guilt was established not by evidence that was relevant to the particular offense being tried, but rather by evidence that was wholly unrelated to the offense, then it is not harmless error. And I say that this was not harmless error in this case, that this evidence was excluded, that we needed to admit, and that evidence was admitted that was very prejudicial to the defendant. Thank you, Your Honor. Roberts. Thank you both for your argument. The case just argued will be submitted for decision.
judges: Hawkins, Thomas, Clifton